ROEHL TRANSPORT, INC.,
Plaintiff-Appellant-Cross-Respondent,

v.

LIBERTY MUTUAL INSURANCE COMPANY,
Defendant-Respondent-Cross-Appellant,

Barbara REILLY, Brian Kaminski and
Charles Kilander, Defendants.

Supreme Court

*No. 2008AP1303. Oral argument March 3, 2010.
—Decided June 22, 2010.*

2010 WI 49

(Also reported in 784 N.W.2d 542.)

For the plaintiff-appellant-cross-respondent there were briefs by *Lawrence R. King, Mark A. Solheim, and Larson • King, LLP,* Saint Paul, Minn., and *Matthew A.*

*Biegert and Doar Drill & Skow, S.C.,* New Richmond, and oral argument by *Lawrence R. King.*

For the defendant-respondent-cross-appellant there were briefs by *William J. Katt, Mark D. Malloy, and Leib & Katt, LLC,* Milwaukee, and oral argument by *William J. Katt.*

An amicus curiae brief was filed by *Lynn R. Laufenberg and the Laufenberg Law Group, S.C.,* Milwaukee, on behalf of the Wisconsin Association for Justice.

An amicus curiae brief was filed by *Thomas R. Schrimpf, Melissa J. Lauritch, and Hinshaw & Culbertson LLP,* Milwaukee, on behalf of the Wisconsin Insurance Alliance.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is an appeal and cross appeal from a judgment and order of the Circuit Court for St. Croix County, Hon. Eric J. Lundell, Judge, on certification by the court of appeals pursuant to Wis. Stat. § 809.61 (2007–08).[1]

¶ 2. Roehl Transport, Inc., the plaintiff insured, brought an action against its insurance company, Liberty Mutual Insurance Company, for the tort of bad faith. A Truckers/Auto Insurance Policy issued by Liberty Mutual insured Roehl Transport, Inc. up to $2 million in liability coverage. The policy had a $500,000 deductible, meaning that Roehl Transport, Inc. agreed to pay the initial $500,000 on certain claims made against it under the policy. Liberty Mutual was responsible for paying any damages between the $500,000 deductible and the $2 million policy limit.

¶ 3. Roehl Transport's bad faith claim against Liberty Mutual stems from Liberty Mutual's handling of a personal injury claim brought against Roehl Trans-

---

[1] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

port by Arthur Groth. Groth's car was rear-ended by one of Roehl Transport's trucks. Groth was injured and sued Roehl Transport and Liberty Mutual for damages. The jury found Roehl Transport liable to Groth and awarded Groth $830,400 in damages. This verdict was well within the $2 million dollar limit of the insurance coverage but cost Roehl Transport all of its $500,000 deductible.

¶ 4. The facts and circumstances of Liberty Mutual's handling of Groth's personal injury claim against Roehl Transport provide the gravamen of Roehl Transport's complaint against Liberty Mutual for bad faith.

¶ 5. In the past, an insurance company's decision to settle within policy limits generally cost an insured little because the deductible was modest. Here the amount of the deductible is substantial. We have not previously addressed a bad faith claim when the judgment entered against the insured is within policy limits. With the increasing prevalence of high-deductible policies, cases such as the present one may become more common.

¶ 6. Five issues are presented on the appeal by Roehl Transport and the cross-appeal by Liberty Mutual:

> (1) Does Roehl Transport, an insured with a deductible for its liability coverage, have a cognizable bad faith claim against its insurance company when the insurance company exercises control over the settlement of a third-party claim and engages in bad faith conduct toward the insured, even though the judgment does not exceed the policy limits?[2]

---

[2] Liberty Mutual raised this issue of law before the circuit court in a motion for summary judgment, in a motion for

(2) Is there credible evidence in the present case to support the jury's finding of bad faith?[3]

(3) Is Roehl Transport's claim for bad faith barred by judicial public policy considerations on the ground that Roehl Transport sought a jury determination regarding what Groth's liability claim against it "could have settled for?"[4]

(4) Did the circuit court err in refusing to award attorney fees when evidence of the amount of attorney fees claimed by the insured for prosecuting its bad faith claim was not submitted to the jury?[5]

(5) Did the circuit court err as a matter of law in denying Roehl Transport's claim for punitive damages?[6]

---

dismissal at the close of Roehl Transport's evidence at trial, and again in a post-trial motion for judgment notwithstanding the verdict. The circuit court denied these motions. Liberty Mutual raised this issue before this court.

[3] Liberty Mutual challenged the sufficiency of the evidence by a post-trial motion for change of verdict. The circuit court denied the motion. Liberty Mutual raised this issue in its cross appeal.

[4] Liberty Mutual raised this issue on motion for summary judgment in the circuit court. The circuit court denied the motion. Liberty Mutual raised this issue before this court.

[5] Roehl Transport's complaint specifically sought attorney fees. At the pretrial conference, Roehl Transport informed the circuit court that it intended to seek attorney fees. After verdict, Roehl Transport petitioned for attorney fees and the circuit court denied Roehl Transport's motion for attorney fees. Roehl Transport raised this issue in its appeal.

[6] Roehl Transport's complaint specifically sought punitive damages. The circuit court ruled that Roehl Transport could not pursue punitive damages, and the issue was not presented to the jury. After verdict, Roehl Transport moved for a second jury trial to determine whether punitive damages should be

¶ 7. We hold as follows:

(1) Roehl Transport, an insured with a deductible for its liability coverage, has a cognizable bad faith claim against its insurance company when the company has control over settlement of a third-party claim and engages in bad faith conduct toward the insured, even though the judgment does not exceed the policy limits.

(2) Sufficient credible evidence supports the jury's finding of bad faith and the jury's determination of damages in this case.

(3) Judicial public policy considerations do not preclude Roehl Transport's bad faith claim.

(4) Roehl Transport is entitled to attorney fees as a matter of law upon the jury's finding of bad faith. The amount of attorney fees to be awarded is for the circuit court to determine on remand.

(5) The circuit court did not err in denying Roehl Transport's claim for punitive damages.

¶ 8. Accordingly, we affirm the judgment and order of the circuit court awarding Roehl Transport damages on its bad faith claim and denying Roehl Transport's claim for punitive damages. We reverse the circuit court's denial of attorney fees to Roehl Transport and remand the matter of attorney fees to the circuit court for determination of the amount of attorney fees to be awarded Roehl Transport.

¶ 9. We shall address each issue of law in turn after first setting out the facts necessary to understand the case and the issues to be resolved.

---

awarded. The circuit court denied the motion. Roehl Transport raised this issue before this court.

66

## I

¶ 10. The factual background necessary to decide the issues of law presented is neither complicated nor disputed. Additional facts relevant to the various legal issues are presented in the discussion of each issue.

¶ 11. Roehl Transport, Inc., operates a trucking company of about 1,500 trucks, headquartered in Marshfield, Wisconsin. Defendant Liberty Mutual Insurance Company is a national insurer. Roehl Transport purchased insurance from Liberty Mutual beginning in 1989 and renewed the policy annually through 2000. The policy covered liability for property damage and bodily injury up to $2 million. The policy included an endorsement specifically negotiated and agreed upon between Everett Roehl, then president of Roehl Transport, and Liberty Mutual, for a deductible of $500,000 per occurrence for automobile liability and general liability coverage.[7]

¶ 12. The policy at issue in this suit was effective from December 1, 1999 to December 1, 2000.

¶ 13. The liability coverage in Roehl Transport's policy covered "all sums" that Roehl Transport was required to pay as damages for bodily injury or property damage, as follows:

> We [Liberty] will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

---

[7] Roehl Transport's deductible under the policy was $500,000 per occurrence for general liability and auto liability. Liberty Mutual does not dispute that the Groth claim was within this coverage.

67

¶ 14. Despite the large deductible, the policy also provided, as is customary in Liberty Mutual policies, that Liberty Mutual retained control over the claims process. Liberty Mutual had the right and duty to defend the insured against a suit asking for damages covered under the policy and could investigate and settle any claim or suit as Liberty Mutual considered appropriate. The policy's settlement provision reads as follows:

> We [Liberty] have the right and duty to defend any "insured" against a "suit" asking for . . . [covered] damages . . . . We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

¶ 15. Roehl Transport paid Liberty Mutual a fee for claim handling. Liberty Mutual provided Roehl Transport with a customer service representative whose sole function was to act as an ombudsman in the event Roehl Transport had concerns about a claim. Roehl Transport also negotiated "Special Handling Instructions" with Liberty Mutual, which were not part of the insurance policy, giving Roehl Transport input in settlement and handling of claims and promising to provide Roehl Transport with information during the claims handling procedure.[8]

¶ 16. The present dispute between Roehl Transport and Liberty Mutual arose from Liberty Mutual's

---

[8] The Special Handling Instructions provided: "We [Liberty Mutual] have agreed to discuss and obtain the insureds [sic] agreement on all bodily injury settlements. Pricing should be discussed with [Roehl Transport Safety Director] Terry Littleton prior to entering negotiations."

handling of a personal injury claim against Roehl Transport brought by Arthur Groth, whose car was rear-ended by a Roehl Transport truck on January 20, 2000. Roehl Transport notified Liberty Mutual of the collision on the day it occurred, and Liberty Mutual took on the investigation and handling of Groth's claim. No settlement was reached with Groth. Groth sued and obtained a jury verdict of $830,400 against Roehl Transport, consuming Roehl Transport's full $500,000 deductible.[9]

¶ 17. Roehl Transport filed the suit that is the subject of this appeal against Liberty Mutual, alleging numerous claims. Only the action for bad faith was ultimately pursued; the jury was instructed only on the bad faith claim; and only the bad faith claim is at issue here.

¶ 18. In summary, Roehl Transport alleges that Liberty Mutual missed the opportunity to settle the Groth claim for less than the full amount of Roehl Transport's $500,000 deductible. Roehl Transport asserts that Liberty Mutual's handling of the Groth claim was replete with inadequate investigation, inexperienced and high-turnover staffing, and lack of good faith efforts in pursuing settlement, all of which Roehl Transport asserts resulted in Liberty Mutual's failure to settle the Groth claim for less than the ultimate jury verdict, resulting in damages to Roehl Transport.

¶ 19. Liberty Mutual moved for summary judgment on the bad faith claim, arguing that Roehl Transport's bad faith claim is not recognized in Wisconsin law because the judgment entered in the Groth

---

[9] Further details regarding Liberty Mutual's handling of Groth's claim are set out below in our analysis of Liberty Mutual's challenge to the jury verdict.

lawsuit against Roehl Transport was not in excess of the $2 million policy limit. Roehl Transport also moved for summary judgment.

¶ 20. In a memorandum decision and order, the circuit court "disagree[d] with Liberty's suggestion that Roehl's claims are not recognized by Wisconsin law." Relying on *Anderson v. Continental Insurance Co.*, 85 Wis. 2d 675, 685–86, 271 N.W.2d 368 (1978), the circuit court determined "that Roehl asserted a bad faith claim against Liberty and that such a claim is recognized in Wisconsin." The circuit court also determined that "[w]hether Liberty satisfied its implied duty of good faith or, on the other hand, whether 'important facts were recklessly ignored and disregarded' during Liberty's adjustment of the claim are questions of fact."

¶ 21. The case proceeded to a jury trial. Both parties presented evidence, including testimony from expert witnesses. Roehl Transport argued that the Groth claim should have settled for $100,000 in 2001 and asked the jury for damages of $400,000, representing the difference between the $100,000 settlement figure and the $500,000 deductible. Liberty Mutual argued for a finding of no bad faith and no damages.

¶ 22. The jury found that Liberty Mutual's conduct was in bad faith and awarded Roehl Transport $127,000 in compensatory damages.[10] The jury returned a three-part special verdict in favor of Roehl Transport, finding: (1) that Liberty Mutual breached duties owed to Roehl Transport in the handling of the

---

[10] Roehl Transport contested the jury's valuation in post-verdict motions. The circuit court concluded sufficient evidence existed in the record to support the jurors' verdict and that "there are multiple possibilities for how they arrived at the final figure." On appeal, neither side contests the jury's damage figure.

Groth claim; (2) that Liberty Mutual's failure to perform its duties to Roehl Transport "demonstrate[d] a significant disregard of Roehl Transport's interests such that [Liberty Mutual's] failure to settle the Groths' claim was done in bad faith;" and (3) that $127,000 should be awarded as the "sum of money [that] will fairly and reasonably compensate Roehl Transport for the bad faith actions of Liberty Mutual Insurance Company."

¶ 23. In a post-trial motion for judgment notwithstanding the verdict, Liberty Mutual renewed its argument that Roehl Transport's bad faith claim is not recognized in Wisconsin law because the claim against the insured did not result in liability to Roehl Transport exceeding the $2 million limit of its liability coverage. The circuit court denied Liberty Mutual's motions.

¶ 24. Roehl Transport filed post-trial motions for an award of attorney fees and for a second trial on punitive damages. The circuit court denied these motions. This appeal and cross-appeal followed.

II

¶ 25. We turn first to the question whether a cognizable bad faith claim exists in Wisconsin when a verdict against the insured in the underlying third-party liability claim is less than policy limits but costs the insured its deductible. The question presented is one of law to be determined by this court independently and benefiting from the analysis of the circuit court.[11]

---

[11] This legal issue was presented to the circuit court in motions by Liberty Mutual. Liberty Mutual moved for summary judgment. We review summary judgment decisions using the

## A

¶ 26. Roehl Transport argues that in investigating and handling a claim of liability against it, Liberty Mutual may not ignore the interests of Roehl Transport. Roehl Transport contends that Liberty Mutual cannot conduct a slipshod investigation, ignore settlement opportunities, mishandle the legal defense, and engage in all manner of misconduct, thus wasting Roehl Transport's $500,000 deductible, but then avoid legal responsibility for its alleged bad faith actions only because the judgment entered was within policy limits. In sum, Roehl Transport's position is that if Liberty Mutual breaches its duty of good faith during adjustment of the claim, Liberty Mutual should be held liable for Roehl Transport's damages in a bad faith tort claim.

¶ 27. In contrast, Liberty Mutual argues that Roehl Transport cannot succeed in a bad faith claim against it in the absence of a verdict in excess of policy limits and that because Roehl Transport bargained for

---

same standards and methods applied by the circuit court. Under Wis. Stat. § 802.08(2), a moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Neither party contends that there are disputed issues of fact material to resolving the legal issue of whether a bad faith claim may be brought in the present case.

Liberty Mutual also moved for dismissal at the close of Roehl Transport's evidence at trial, arguing that without evidence of a verdict in excess of policy limits, there was no credible evidence to support Roehl Transport's bad faith claim.

Liberty Mutual also moved for judgment notwithstanding the verdict, challenging whether the facts found in the verdict were legally sufficient to permit recovery in the absence of a verdict in excess of policy limits.

lower premiums by accepting a high deductible, it cannot now complain that it was required to pay a sum up to the amount of its deductible. Liberty Mutual contends that only the following three types of bad faith claims are recognized in Wisconsin[12] and that this case does not fall within any of the three types:

 (1) An insured may bring a bad faith action against the insurance company for failing to settle the claim with a third-party claimant when the ultimate judgment exposes the insured to a judgment in excess of the policy limits. This type of claim is known as a third-party bad faith claim.[13]

 (2) An insured may bring a bad faith action "when the insurer unreasonably and in bad faith withholds payment of the claim of its insured."[14] This type of claim is known as a first-party bad faith claim.[15]

---

[12] *See A.W. Huss Co. v. Cont'l Cas. Co.*, 735 F.2d 246, 249 (7th Cir. 1981) (citing *Kranzush v. Badger State Mut. Cas. Co.*, 103 Wis. 2d 56, 60–62, 307 N.W.2d 256 (1981)).

[13] Third-party bad faith cases may be described as "bad faith cases based on a liability insurer's failure to accept a third-party claimant's offer to settle his claim against the insured." Stephen S. Ashley, *Bad Faith Actions: Liability and Damages* § 3:01 (2d ed. 1997).

[14] *Kranzush v. Badger State Mut. Cas. Co.*, 103 Wis. 2d 56, 62, 307 N.W.2d 256 (1981) (quoting *Anderson v. Cont'l Ins. Co.*, 85 Wis. 2d 675, 689, 271 N.W.2d 368 (1978)).

[15] In a first-party bad faith case, the insured has a bad faith claim against its insurance company for the company's failure to exercise good faith in paying benefits or honoring the insured's claim under the policy against the insurance company. "First party insurance generally describes those types of insurance coverage under which the insured (or his beneficiaries) recovers benefits directly from his own insurer without the need to establish fault (*e.g.*, life, fire, accident and health, and income disability coverages)." John J. Kircher, *Insurer's Mistaken Judgment—A New Tort?*, 59 Marq. L. Rev. 775, 775 n.3 (1976).

 (3) A claimant may have a bad faith action against an insurance company based on the insurance company's failure to reimburse the claimant for a worker's compensation claim.

¶ 28. Liberty Mutual is correct that the facts of the present case do not completely fit within any of the three types of claims already recognized as cognizable bad faith claims in Wisconsin.

¶ 29. The instant case does, however, fit in large part within the first type of bad faith claim described above: The present case is a third-party bad faith claim. The key distinction between the instant case and the previously recognized third-party bad faith claim is that Roehl Transport was not exposed to a judgment in excess of its policy limit.

B

¶ 30. The question presented in the instant case is therefore whether an excess liability judgment, that is, a judgment in an amount greater than the insurance policy's coverage, is a necessary prerequisite for an insured to bring a third-party bad faith claim under Wisconsin law. Another way to view the question is whether the three types of bad faith claims described above are the only types of bad faith claims cognizable in Wisconsin.

¶ 31. The availability of a bad faith claim under the facts in the instant case has not previously been decided by this court.

¶ 32. This court must therefore analyze the cause of action for bad faith in insurance cases to determine whether the facts of the instant case fit the framework of bad faith claims recognized by Wisconsin law.

██

¶ 33. We begin by noting that "[i]n Wisconsin as in many states the doctrine of bad faith in insurance claims is a case law development."[16] The Wisconsin Supreme Court first allowed a cause of action for bad faith in 1916 and fully recognized the tort of bad faith in 1931.[17] Thereafter, Wisconsin case law has continued to develop the tort.

¶ 34. The case law, our precedent, guides us in determining whether the fact situation presented here supports Roehl Transport's bad faith claim. Our analysis follows traditional methods and principles of common-law analysis.

¶ 35. Liberty Mutual argues that Roehl Transport's claim is not and should not be recognized by the law. To the extent Liberty Mutual argues that the three previously recognized situations giving rise to a bad faith cause of action are exclusive, it asks the court to arrest the common-law development of the tort of bad faith.

¶ 36. No Wisconsin case holds that the three types of bad faith claims previously recognized are the only situations in which a claim of insurance bad faith may be recognized. Nor do Wisconsin cases purport to catalogue all possible bad faith claims. We cannot unearth any hint in the case law that the tort of bad faith is confined to the three fact patterns described in the existing case law. Rather, the three identified types of insurance bad faith claims arise from fact situations presented to the courts to date.

---

[16] *Huss,* 735 F.2d at 249.

[17] The earliest Wisconsin cases recognizing a bad faith cause of action are among the first in any jurisdiction. For a treatment of the historical development of bad faith cause of action in jurisdictions around the country, see Ashley, *supra* note 13, ch. 2.

¶ 37. A review of the history of the tort reveals an evolution of the tort of bad faith over the decades. The case law first recognized a bad faith claim in third-party claims with judgments exceeding policy limits, while later cases recognized the validity of the claim in two novel situations: first-party claims and workers' compensation claims. The common-law history of insurance bad faith claims in this state requires the court to analyze the facts of the claim presented and determine whether the established principles of the tort of bad faith support recognizing the claim presented as raising a valid cause of action.

¶ 38. Our analysis is set out in two steps. We first summarize the principles derived from our case law. These principles support our conclusion that the instant case fits within the framework of bad faith insurance claims long recognized by our cases. The facts here therefore give rise to a cognizable bad faith claim. After summarizing the principles distilled from the cases, we then discuss the particular cases in which those guiding principles have been developed.

¶ 39. The principles of the tort of bad faith can be summarized as follows.

██

¶ 40. First, a bad faith claim "sounds in tort."[18] The tort cause of action for bad faith arises out of a contractual arrangement but is not a contract action.

---

[18] *Anderson v. Cont'l Ins. Co.*, 85 Wis. 2d 675, 686, 271 N.W.2d 368 (1978) ("bad faith conduct by one party to a contract toward another is a tort separate and apart from a breach of contract per se"); *Kranzush,* 103 Wis. 2d at 60 ("Under our case law the notion that an insurance company may be required to respond in extracontractual damages as a result of certain tortious conduct in the settlement of claims or the payment of benefits has evolved into three separate theories of bad faith recovery.").

¶ 41. Rather, the tort of bad faith is a separate intentional wrong, which results from a breach of a duty imposed as a consequence of the contractual relationship.[19] An insurance company owes a duty to its insured to settle or compromise a claim made against the insured and to act in good faith in doing so.[20] The duty is implied by the terms of the insurance policy that give the insurance company exclusive power to settle claims.[21]

¶ 42. Thus, the tort of bad faith intrinsically relates to the nature and existence of the insurance contract.[22] Because the duty is rooted in the contractual relationship, this court has refused to recognize a bad faith claim when a claimant was not in a contractual relationship with an insurance company.[23] In the present case, Roehl Transport and Liberty Mutual have a contractual relationship, the insurance policy.

■

¶ 43. Second, the tort of bad faith is derived from the implied covenant of good faith and fair dealing found in every contract.[24] Thus the breach of duty from

---

[19] *Anderson,* 85 Wis. 2d at 687.

[20] *Mowry v. Badger State Mut. Cas. Co.,* 129 Wis. 2d 496, 510, 385 N.W.2d 171 (1986); *Alt v. Am. Family Mut. Ins. Co.,* 71 Wis. 2d 340, 347, 237 N.W.2d 706 (1976).

[21] *Mowry,* 129 Wis. 2d at 510.

[22] *Hilker v. Western Auto. Ins. Co.,* 204 Wis. 1, 13–16, 235 N.W. 413 (1931).

[23] *Kranzush v. Badger State Mut. Cas. Co.,* 103 Wis. 2d 56, 307 N.W.2d 256 (1981).

[24] *Anderson,* 85 Wis. 2d at 689 (relying on the Restatement (Second) of Contract § 205 (1981)). *See Allis Chalmers Corp. v. Lueck,* 471 U.S. 202, 216–17 (1985) (examining Wisconsin bad

which the tort claim follows is not of any explicit term of the contractual obligations but of the implicit duty to act in good faith in carrying out the insurance contract.

¶ 44. Third, third-party bad faith claims arose to protect holders of insurance policies against abusive, "bad faith" practices of insurance companies in adjusting or settling liability claims against the insured when the interests of the insured are in the hands of the insurance company and may come into conflict with the insurance company's own interests.

¶ 45. Such conflict arises in the traditional third-party bad faith claim when the insurance company retains exclusive control over settling claims against the insured and the value of the claim might exceed the policy limits but the tort victim offers to settle the claim within policy limits.

¶ 46. On the one hand, the insurance company's acceptance of the settlement offer would protect the interests of the insured by limiting total liability to an amount the insurance company will pay.

¶ 47. On the other hand, the insurance company's rejection of a settlement offer for policy limits may better serve the interest of the insurance company. If the insurance company "wins" at trial, by defeating the claim outright or by at least achieving a judgment within policy limits, the insurance company will be in a better position than it would have been in had it accepted the settlement offer. But if the insurance

faith law; observing that "the implied duty to act in good faith is different from the explicit contractual duty" and "the tort exists for breach of a 'duty devolv[ed] upon the insurer by reasonable implication from the express terms of the contract' " (quoting *Hilker*, 204 Wis. at 16)).

Good faith is an implied covenant arising from the contractual relationship. 14 *Couch on Insurance* § 198:5 (3d ed. 2005).

company "loses" at trial, it will be in no worse a position than it would have been in had it accepted the settlement offer.

¶ 48. An insurance company's rejection of a settlement offer for policy limits thus risks much for the insured but little for the insurance company. The insurance company's obligation will be limited to the policy limits while the insured might become personally liable for any judgment above the policy limits. Therefore, in these traditional third-party bad faith cases, when the insurance company rejects a policy limits settlement offer, it is, in effect, gambling with the insured's money.

¶ 49. Under these circumstances, the case law has recognized that the interests of the insurance company and the insured are in conflict. Courts have concluded that when there is such a conflict of interests, the insurance company will be liable if it fails to exercise good faith in settling the claim. Good faith means being faithful to one's duty or obligation. "[B]ad faith means being recreant thereto."[25]

¶ 50. The insurance company's duty of good faith arises because the insured has bartered away its rights to control settlement to the insurance company and must depend on the insurance company to investigate and settle the matter properly. An insurance company cannot merely wait for a legally binding offer to settle; it has a positive duty "to take the initiative and attempt to negotiate a settlement within the policy coverage."[26]

---

[25] *Hilker,* 204 Wis. at 13.

[26] *Alt,* 71 Wis. 2d at 351–52 (quoting *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.,* 323 A.2d 495, 507 (N.J. 1974) ("We . . . hold that an insurer . . . has a positive fiducially duty to take the initiative and attempt to negotiate a settlement within

An insured is given a bad faith tort cause of action to protect against the risk that an insurance company may place its own interests above those of the insured and that the recovery available to the insured for breach of contract would not fully compensate the insured for the resulting harms.[27] When an insurance company breaches its duty of good faith, it might therefore become liable for the tort of bad faith.

¶ 51. The present case is much like the traditional third-party bad faith claims recognized in this state. In the present case, Roehl Transport has agreed to pay part of any settlement, that is, it has agreed to pay up to its deductible, and has also agreed to pay in excess of policy limits. Roehl Transport has relinquished to Liberty Mutual the right to negotiate on its own behalf with third-party claimants.

■

¶ 52. Roehl Transport, the insured, is therefore dependent on Liberty Mutual, the insurance company, to see that the insured's best interests are protected as the insurance company deals with third-party claims. Liberty Mutual has a duty of good faith with respect to matters falling within its responsibilities under the policy. A duty of good faith, as we stated previously, inures to every contract.[28]

¶ 53. Under the circumstances of the present case in which the insured has a significant deductible, the insurance company's and the insured's interests might

---

the policy coverage."); II Arnold P. Anderson, *Wisconsin Insurance Law* § 8.30 (5th ed. 2004).

[27] For a discussion of traditional contract remedies and the resulting recognition of a remedy in tort, see Ashley, *supra* note 13, §§ 2:02–2:03.

[28] *See Anderson,* 85 Wis. 2d at 688–89.

diverge, and the insurance company could make decisions in settling claims that favor its own interests over those of the insured. The insurance company might offer an unnecessarily high settlement within the deductible to avoid the expense of diligent investigation and adjustment. Or it might expend insufficient effort to investigate a claim unless or until the insurance company's own money is at risk when the value of the claim approaches or exceeds the deductible.

¶ 54. The insurance company's apparent interest in settling claims below the deductible is to minimize its own costs, not necessarily to minimize the total payment to the claimant. Just as in traditional third-party excess judgment cases, the insured with a high deductible needs the protection of a bad faith cause of action to guard against the risk that an insurance company's exercise of control over a claim might favor its own financial interests over those of the insured. This possibility gives rise to a cause of action for bad faith.

¶ 55. The present situation is thus analogous to the third-party situation in which a claim may exceed the policy limits. In both instances, the insurance company has control over settlement, the insured has direct financial exposure as a result of the insured's conduct, and the interests of the insurance company and the insured diverge. An insurance company's bad faith conduct exposes an insured to a set of harms not covered by the policy.

██

¶ 56. Liberty Mutual would not be free to disregard Roehl Transport's interest if liability had exceeded policy limits, and similarly Liberty Mutual is not free to disregard Roehl Transport's interest when liability was less than policy limits but implicated Roehl Transport's liability for the deductible. Similarly, an insurance

81

company may not burden the insured with payment of the deductible through its failure to negotiate settlement or conduct its investigation of the claim in good faith. If the insurance company fails to act in good faith, the insured might bring a bad faith action.

¶ 57. For the very reasons our cases have concluded that an insurance company becomes liable for the tort of bad faith when it fails to act in good faith and exposes its insured to liability over policy limits, we likewise conclude that an insurance company may be liable for the tort of bad faith when the insurance company fails to act in good faith and exposes the insured to liability for sums within the deductible amount.

¶ 58. We conclude that Roehl Transport raises a cognizable claim of bad faith in the present case, which, if proved, allows for recovery against Liberty Mutual.

C

¶ 59. We now examine the seminal Wisconsin bad faith insurance cases that inform our decision.

¶ 60. One of the earliest cases recognizing that a claim might lie against an insurance company for "bad faith" in handling a third-party liability claim against the insured is *Wisconsin Zinc Co. v. Fidelity & Deposit Co. of Maryland,* 162 Wis. 39, 155 N.W. 1081 (1916).

¶ 61. In *Wisconsin Zinc,* an injured employee sued his employer. The employers' insurance company refused settlement offers within policy limits. The employee sued the insured employer and was awarded a judgment for which the employer paid a substantial sum beyond the policy coverage. *Wisconsin Zinc,* 162 Wis. 39, 41–42.

¶ 62. The employer in turn sued its insurance company for refusing the settlement offer. The employer set out three causes of action based on the same facts, "[o]ne on contract, one in tort [negligence], and one based on fraud." *Wisconsin Zinc,* 162 Wis. at 40. The court dismissed the contract and negligence causes of action because the insurance contract did not explicitly place a duty on the insurance company to settle claims.

¶ 63. The insured's "fraud" theory was allowed to continue. The court observed that "the power of settlement given the insurer cannot be used for the purposes of fraud or oppression . . . . [T]he power conferred must not be exercised in bad faith. . . . [F]or such there may be a recovery." *Wisconsin Zinc,* 162 Wis. at 53.

¶ 64. The *Wisconsin Zinc* court stated the law as prohibiting an insurance company from handling a claim recklessly and contumaciously when the result would be a loss to both the insurance company and the insured: "While the [insurance company] had the right to consult what it deemed to be its own interest in making a settlement, it could not abuse the power vested in it and recklessly and contumaciously refuse to settle if it was apparent that in all reasonable probability its conduct would not only result in damage to the plaintiff but also in loss to itself." *Wisconsin Zinc,* 162 Wis. at 54.

¶ 65. *Wisconsin Zinc* was revisited fifteen years later in this court's landmark bad faith insurance case, *Hilker v. Western Automobile Insurance Co.,* 204 Wis. 1, 231 N.W. 257 (1930), *reh'g & further opinion,* 235 N.W. 413 (1931).

¶ 66. The *Hilker* case arose from an automobile insurance policy that provided liability coverage with a limit of $5,000 per injured person and gave the insurance company "full and complete control of the handling and adjustment of all claims." *Hilker,* 204 Wis. at

3. The insurance company defended two actions resulting in judgments totaling $10,500. The policy holder sued the insurance company, alleging that it "acted in bad faith in conducting the defense of these actions and . . . that they could have been adjusted for a sum less than $5,000." *Hilker,* 204 Wis. at 3. The court affirmed a judgment in favor of the insured against the insurance company.

¶ 67. *Hilker* is often discussed in the context of articulating the standard for bad faith conduct.[29] Here, our focus is on *Hilker*'s explanation of the conditions and competing interests that give rise to a claim for bad faith. Three observations are especially significant.

¶ 68. First, according to *Hilker,* the duty to settle or compromise a claim is recognized although it is not expressly imposed by the policy. *Hilker,* 204 Wis. at 13.

¶ 69. Second, the *Hilker* court concluded that the insurance company's duty to settle a claim need not arise from an explicit obligation to settle but "is implied as a correlative duty growing out of certain rights and privileges which the contract confers upon the insurer." *Hilker,* 204 Wis. at 13.

¶ 70. Third, *Hilker* emphasized the underlying rationale for allowing an insured's claim for an insurance company's bad faith: the conflicting interests of the insured and the insurance company and the need to protect the insured when control of negotiations is taken from the insured and given to the insurance company. The *Hilker* court explained that the insurance company's duty to settle or compromise a claim arises "because the insured has bartered to the insurance

---

[29] For a discussion of the standard for third-party bad faith cases as articulated in the *Hilker* case and in later Wisconsin cases, *see* II Anderson, *supra* note 26, §§ 8.12–.26.

company all of the rights . . . to protect himself as best he can from the consequences of the injury." *Hilker,* 204 Wis. at 14.

¶ 71. The court explained an insurance company's duty, the breach of which gives rise to a claim of bad faith, as follows:

> In express terms the contract imposes no duty at all a breach of which makes the insurer liable to the insured for a failure to settle or compromise a claim. However . . . the insurer does owe to the insured some duty in this respect. This duty is implied as a correlative duty growing out of certain rights and privileges which the contract confers upon the insurer. By the terms of this contract the absolute control of the defense of such actions is turned over to the insurer, and the insured is excluded from any interference in any negotiations for settlement or legal procedure. It is generally understood that these are rights and privileges which it is necessary for the insurer to have in order to justify or enable it to assume the obligations which it does in the contract of insurance.

*Hilker,* 204 Wis. at 13–14.

¶ 72. The *Hilker* court emphasized that an insured has an "interest" or "concern" in how a claim is to be settled when the insurance company controls settlement and the injured person's recovery exceeds the liability limits of the insurance policy:

> So long as the recovery does not exceed the limits of the insurance, the question of whether the claim be compromised or settled, or the manner in which it shall be defended, is a matter of no concern to the insured. *However, where an injury occurs for which a recovery may be had in a sum exceeding the amount of the insurance, the interest of the insured becomes one of concern to him. At this point a duty on the part of the*

*insurer to the insured arises.* It arises because the insured has bartered to the insurance company all of the rights possessed by him to enable him to discover the extent of the injury and to protect himself as best he can from the consequences of the injury. . . .

It is the right of the insurer to exercise its own judgment upon the question of whether the claim should be settled or contested. . . . [I]ts exercise of this right should be accompanied by considerations of good faith.

*Hilker,* 204 Wis. at 14 (emphasis added).

¶ 73. In the present case, Liberty Mutual relies heavily on the language in *Hilker,* which states that settlement within policy limits "is a matter of no concern to the insured" and that the insurance company's duty of good faith does not arise until "recovery may be had in a sum exceeding the amount of the insurance."

¶ 74. We take these sentences in *Hilker* to be descriptive of the point at which the insured's "concern" accrued in the *Hilker* case and in the many fact situations of which the court was aware. This statement observed, or assumed, that a settlement within policy limits would be "a matter of no concern" to the insured in that case. Nothing in the *Hilker* decision or in the briefs indicates that the insured had any other concern than that the claim would exceed the policy limits. The *Hilker* court was not thinking about a claim within a deductible.

¶ 75. We look to the reasoning of *Hilker,* not to a narrow reading of language specific to the facts of that case. *Hilker* teaches that the duty of good faith arises when an insurance company has control over settlement and the interests of the insurance company and

86

the insured are adverse. These conditions emphasized in *Hilker* are met in the present case.

¶ 76. In the present case, Roehl Transport's interest, its "concern," in the language of *Hilker*, is not only to avoid liability in excess of its coverage limits but also to limit any personal liability that arises from its deductible. Roehl Transport's interest in settlement under the deductible amount is comparable to the insured's concern in *Hilker* with a settlement in excess of policy limits.

¶ 77. Simply put, it *is* a matter of concern to Roehl Transport whether the insurance company settles for less than policy limits and exposes Roehl Transport to liability within the amount of its deductible. Roehl Transport's interest is in settling the claim for as little as possible below $500,000. Liberty Mutual, on the other hand, has little concern with the value of a claim settled below $500,000; its financial interest is in minimizing its costs in investigating and adjusting the claim and in keeping the settlement amount below $500,000. The interests of Liberty Mutual and Roehl Transport are in conflict regarding payment of a claim below the sum of $500,000.

¶ 78. Thus in the present case, to use the rationale and words of *Hilker*, a duty on the part of Liberty Mutual to Roehl Transport arose when the claim was made because Roehl Transport had bartered to Liberty Mutual all the rights Roehl Transport possessed to protect itself as best it can from the consequences of the injury. We read *Hilker* as supporting Roehl Transport's bad faith claim in the instant case.

¶ 79. Later cases have reiterated *Hilker*'s rationale for a bad faith claim in similar fact situations. Cases have continued to explain the duty of an insurance company to exercise good faith when its actions

effectively dispose of the assets of the insured. Although this rationale is not limited to judgments or settlements in excess of the policy limits, third-party cases after *Hilker* have involved judgments in excess of liability limits and have included language focusing on the excess judgment as creating the insured's interest in the adjustment or settlement of a claim.[30]

¶ 80. Yet bad faith claims have not been limited in Wisconsin to the fact situations in *Wisconsin Zinc* and *Hilker.* Forty-seven years after *Hilker,* by which time third-party bad faith claims were well established, the court determined that a bad faith claim could lie in a first-party claim against an insurance company.

¶ 81. In *Anderson v. Continental Insurance Co.,* 85 Wis. 2d 675, 271 N.W.2d 368 (1978), the insureds had a homeowner's policy and sought payments from the insurance company for fire damage. They brought a bad faith claim against their insurance company, alleging that their insurance company's response to their claim for benefits was "wilful, fraudulent, intentional and in bad faith and for the purpose of discouraging, avoiding, or reducing the payment due under the terms of the policy." *Anderson,* 85 Wis. 2d at 682.

---

[30] *See, e.g., Alt,* 71 Wis. 2d at 349 (insurance company required to make a determination "whether the exposure may jeopardize the insured by being in excess of the policy limits"); *Kranzush,* 103 Wis. 2d at 60 ("if the insurer fails to settle a third-party claim within the limits of the policy and chooses instead to litigate the matter, the insured will be exposed to that portion of any judgment which exceeds the policy limits."); *see also Huss,* 735 F.2d at 250 (applying Wisconsin law) ("[A]ll Wisconsin reported decisions available to us which address third party claimants and subsequent disputes between the insured and insurer involve the insured's claim for excess judgment.")

¶ 82. The insurance company moved to dismiss the bad faith claim, arguing that the Wisconsin Supreme Court had not previously allowed such a claim in an action brought by an insured against his own insurance company. The *Anderson* court held that a first-party bad faith claim was cognizable in Wisconsin. The court declared that "in every insurance contract, there is an implied covenant of good faith and fair dealing. The duty to so act is imminent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself." *Anderson,* 85 Wis. 2d at 689 (quoted source omitted).

¶ 83. Adhering to the same reasoning used in the *Hilker* and *Wisconsin Zinc* cases, the *Anderson* court wrote as follows: "By virtue of the relationship between the parties created by the contract, a special duty arises, the breach of which duty is a tort and is unrelated to contract damages." *Anderson,* 85 Wis. 2d at 686. Because *Hilker's* reasoning rested on a "duty on the insurance company . . . analogous to that of a fiduciary," the *Anderson* court concluded that the existence of this underlying duty of good faith also supported a first-party bad faith tort action. *Anderson,* 85 Wis. 2d at 688.

¶ 84. The *Anderson* case teaches that when considering whether the tort of bad faith is available in a factual situation different from that presented in *Wisconsin Zinc* and *Hilker,* the court is to return to the basic principles set forth in *Hilker* underlying the tort of bad faith. An insurance company has a duty to the insured that is "analogous to that of a fiduciary"[31] and

---

[31] *Anderson,* 85 Wis. 2d at 688.

"[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."[32]

¶ 85. Following on the heels of *Anderson* came *Coleman v. American Universal Insurance Co.,* 86 Wis. 2d 615, 273 N.W.2d 220 (1979), once again raising the issue of whether a claimant in a novel situation had a cognizable claim in Wisconsin under the tort of bad faith. In *Coleman,* an employee was injured in the course of his employment by an employer who was insured for worker's compensation. The employee received worker's compensation payments but then sued the worker's compensation insurance company for a separate injury for the insurance company's bad faith conduct in intentionally and maliciously withholding worker's compensation payments.

¶ 86. The *Coleman* court declared that the "rationale of *Anderson* is applicable not only to the claim of a first-party insured against its insurance company, but is also applicable when the case involves a [victim's] claim against an insurer."[33] The court based its conclusion

[32] *Id.* at 688–89 (citing Restatement (Second) of Contracts § 231 (1973)).

"The rationale which recognizes an ancillary duty on an insurance company to exercise good faith . . . is equally applicable and of equal importance when the insured seeks payment of legitimate damages from his own insurance company." *Anderson*, 85 Wis. 2d at 689.

[33] *Coleman v. Am. Universal Ins. Co.,* 86 Wis. 2d 615, 620, 273 N.W.2d 220 (1979).

The law governing causes of action and remedies for bad faith in worker's compensation has changed since *Coleman* was decided. Our concern in the present case is with the method of common-law analysis utilized in *Coleman*. We in no way address the availability of any claim or remedy in worker's compensa-

90

that a victim's bad faith claim against an insurance company was cognizable on the statutory system of ensuring that workers' injuries were compensated.

¶ 87. The next significant case in which this court was asked to recognize a bad faith claim in a different factual situation was *Kranzush v. Badger State Mutual Casualty Co.,* 103 Wis. 2d 56, 307 N.W.2d 256 (1981). In *Kranzush,* a claimant asked the court to extend *Coleman* to a non-worker's compensation case, arguing that an injured victim (a third party to the insurance policy) had a bad faith claim against the insurance company in a non-worker's compensation case.

¶ 88. In *Kranzush,* the victim in an auto accident filed a suit against the tortfeasor's insurance company, alleging that the company's conduct in handling the victim's claim against the insured allowed recovery in a suit for bad faith. The insurance policy was a contract between the tortfeasor and the insurance company. No insurance policy or contractual relationship existed between the victim and the insurance company.

¶ 89. The *Kranzush* court first outlined the three situations in which the case law had already recognized a bad faith claim against an insurance company: (1) an insured's claim against the insurance company, as in *Hilker,* for failing to exercise good faith in the settlement of the claim of a third party "which arises by virtue of the contractual relationship of the insurer and

tion cases. *See Aslakson v. Gallagher Bassett Servs., Inc.,* 2006 WI App 35, ¶ 10, 289 Wis. 2d 664, 711 N.W.2d 667 ("In response to *Coleman,* the 1979–80 Wisconsin Legislature adopted Wis. Stat. § 102.18(1)(bp), which provides that the department may assess a penalty for bad faith in the handling of a worker's compensation claim and states that this penalty 'is the exclusive remedy against an employer of insurance carrier for malice or bad faith.' ").

the insured . . . ." (2) an insured's claim against his or her insurance company for its "handling of an insured's claim under a casualty, life, health, or accident policy . . . exemplified by *Anderson v. Continental Ins. Co.*"; and (3) "in the handling of a worker's claim for benefits under a worker's compensation policy," as recognized in *Coleman. Kranzush,* 103 Wis. 2d at 60–62.

¶ 90. The facts in the *Kranzush* case came closest to the type of bad faith claim recognized in *Coleman:* a victim sued the tortfeasor's insurance company for bad faith. The *Kranzush* court distinguished *Coleman* on the ground that worker's compensation provided guaranteed coverage and swift payment to worker-victims, while a tort victim of an auto accident "is not the object of a sweeping statutory scheme designed to promote the compensation of injuries in a routine, largely nonadversarial manner." *Kranzush,* 103 Wis. 2d at 65.

¶ 91. The *Kranzush* court then considered whether to recognize a bad faith right of action and determined it would not. Citing numerous cases and resting on the rationale set forth in *Hilker* and *Anderson,* the court identified a constant theme in bad faith cases: an insurance company owes a duty of good faith to the insured but owes no duty to the victim to settle or to negotiate in good faith. *Kranzush,* 103 Wis. 2d at 72–73.

¶ 92. The duty of good faith arises under the insurance policy and the contractual relationship formed between the insurance company and the insured. This duty is owed to the insured, not to a third-party claimant. Absent this underlying duty of good faith flowing from the insurance company to the claimant, the *Kranzush* court determined that a bad faith claim could not be recognized. Kranzush declared that allowing a victim to assert a bad faith claim under

92

the circumstances "would constitute a serious and un-precedented departure from established tort principles." *Kranzush,* 103 Wis. 2d at 73.

¶ 93. Liberty Mutual relies on *Kranzush* for the proposition that the three identified situations in which bad faith claims have been recognized are the *only* available bad faith claims. Liberty Mutual reads more into *Kranzush* than the opinion says and far more than it implies. In fact, by addressing at length whether a bad faith claim should be recognized in this fourth situation, *Kranzush* clearly implies that the three instances in which bad faith claims have previously been recognized are not exclusive. Rather, like *Anderson* and *Coleman* before it, *Kranzush* teaches that each situation must be analyzed in light of the principles recognized in past cases to determine whether a claimant can bring a bad faith claim against an insurance company.

¶ 94. Here, Liberty Mutual appears to concede that it owed a duty of good faith to Roehl Transport in the adjustment of third-party claims against Roehl Transport. Nevertheless, Liberty Mutual asserts that the existence of the duty of good faith does not give rise to a corresponding cause of action for bad faith when the duty is breached but policy limits are not exceeded. We do not accept this argument.

¶ 95. We are not persuaded by Liberty Mutual's argument that allowing a bad faith claim in the instant case will necessarily "open the floodgates" to a great volume of wasteful or frivolous claims against insurance companies. The fact that a previous case involving the loss of the insured's deductible has not already been presented undermines Liberty Mutual's argument. Moreover, we rejected the same argument when we recognized a first-party bad faith claim for the first time in *Anderson,* stating that "[i]nsurers in Wisconsin need

not be mulcted by extortionate or questionable claims if they adhere to the standards of care which we have set forth . . . ."[34]

¶ 96. *Anderson, Coleman,* and *Kranzush* lead to the conclusion that we must examine the situation presented in light of the principles and rationale established in our previous cases. Applying the principles and rationale of bad faith cases in Wisconsin compels the conclusion that Roehl Transport may bring a bad faith tort claim against Liberty Mutual for breach of its duty of good faith when Roehl Transport's interests, namely Roehl Transport's exposure of its substantial deductible, were within Liberty Mutual's control.

¶ 97. Liberty Mutual also relies on *A.W. Huss Co. v. Continental Casualty Co.,* 735 F.2d 246 (7th Cir. 1984), applying Wisconsin law, to conclude that no claim of bad faith is cognizable when the settlement does not exceed the policy limits. In *Huss,* the insured had an automobile liability policy with a limit of $100,000 and an umbrella excess policy with a limit of $1,000,000. The insurance company investigated the claim against the insured and began settlement negotiations. It also advised the insured, in standard language, that the insured had the option of retaining counsel in connection with the case.

¶ 98. The insurance company ultimately settled the claim for $1,100,000, the total policy limits. The insured believed that the insurance company had not settled the matter quickly enough and sued the insurance company for bad faith, seeking damages for anxiety, business loss, attorney fees allegedly incurred in

---

[34] *Anderson,* 85 Wis. 2d at 694.

monitoring the insurance company's handling of the claim and in prosecuting the bad faith action, as well as punitive damages.

¶ 99. The question presented to the federal court was whether "Wisconsin law recognizes a cause of action by the insured against the insurer for alleged bad faith in handling a third party claim where the insurance company settled the claim within the insured's policy coverage."[35] The federal court answered this question in the negative.

¶ 100. In response to the insured's argument that the federal court should accept the insured's claim of bad faith as a fourth category of bad faith claims, the federal court begged off. The federal court stayed within the three fact situations previously recognized in Wisconsin bad faith law. The court asserted that as a federal court in a diversity case applying Wisconsin law, it had limited discretion to recognize "untested legal theories brought under the rubric of state law." *Huss,* 735 F.2d at 253.

¶ 101. Despite its reluctance to recognize a bad faith tort in the novel fact situation presented, the federal court went on to conclude that even if the insured's proposed bad faith claim were to be recognized, the tort would not apply to the facts in *Huss.* The court concluded that the insurance company "exceeded its obligation to defend the insured zealously . . . ." *Huss,* 735 F.2d at 255.

¶ 102. In *Huss,* the federal court emphasized the excess over policy limits as its guiding theory in analyzing bad faith claims, rather than the conflict between the insured and insurance company. This approach is understandable because in the *Huss* case, no conflict

---

[35] *Huss,* 735 F.2d at 247.

between the insured and insurance company occurred as long as the settlement was within policy limits. *Huss* does not govern the present case, in which the interests of the insured and the insurance company were in conflict.

¶ 103. Furthermore, *Huss* was decided before *United Capitol Insurance Co. v. Bartolotta's Fireworks Co.*, 200 Wis. 2d 284, 546 N.W.2d 198 (Ct. App. 1996). There, a "specially tailored" insurance policy included a "self insurance" provision requiring the insured, Bartolotta's Fireworks, to pay the first $25,000 of claims. The self-insured provision is analogous to the deductible in the present case, making *Bartolotta's Fireworks* important in our analysis of whether the instant case presents a cognizable bad faith claim.

¶ 104. The policy in *Bartolotta's Fireworks* had a standard clause giving the insurance company the right to settle claims. The insurance company settled a victim's claim against the insured for $35,000, within the policy limits, without consulting the insured.

¶ 105. The insurance company argued, as Liberty Mutual argues here, that "a bad faith cause of action does not even exist in a case where a settlement was made within policy limits."[36]

¶ 106. In response, the insured conceded that "virtually all other reported cases deal with the insured's personal exposure in excess of liability limits" but argued that in its case the insurance company's good faith obligation "as to settlement discussions which expose the insured's personal assets is no less

[36] Response Brief of Plaintiff-Respondent-Cross Appellant, United Capitol Ins. Co., at 17 (citing *Am. Home Assurance Co. v. Hermann's Warehouse Corp.*, 521 A.2d 903 (N.J. 1987)).

compelling."[37] *Bartolotta's Fireworks* relied on cases from other jurisdictions concluding that a bad faith claim may lie when a settlement within policy limits nevertheless exposes the insured's deductible or other assets.[38]

¶ 107. Thus the court of appeals was directly confronted with the question whether a bad faith claim was cognizable in Wisconsin when settlement was reached within policy limits but the interests of the insured were at risk because of the self-insurance (deductible) provision.

¶ 108. The court of appeals recognized the bad faith claim as cognizable under Wisconsin law. The court of appeals stated that "[t]he duty of good faith serves to balance the interests of the insured against its insurer, which may be tempted to avoid the costs of defense via a quick settlement and *thereby sacrificing the insured's deductible.*"[39]

¶ 109. Ultimately the court of appeals concluded that the insurance company had not acted in bad faith. The court of appeals declared that it "cannot say that [the insurance company] acted in bad faith by striking when the iron was hot and moving this case to settlement" when the insurance company "had the authority to investigate, value, and settle any claim, and did so."

---

[37] Brief and Appendix of Appellant-Cross Respondent [Bartolotta's Fireworks Co., Inc.] at 22.

[38] Brief and Appendix of Appellant-Cross Respondent [Bartolotta's Fireworks Co., Inc.] at 16–19 (citing *St. Paul Fire & Marine Ins. Co. v. Edge Mem'l Hosp.,* 584 So. 2d 1316 (Ala. 1991); *Nat'l Serv. Indus. v. Hartford Accident & Indem. Co.,* 661 F.2d 458 (5th Cir. 1981)).

[39] *United Capitol Ins. Co. v. Bartolotta's Fireworks Co.,* 200 Wis. 2d 284, 296, 546 N.W.2d 198 (Ct. App. 1996) (citing *Mowry,* 129 Wis. 2d at 509–10 (emphasis added)).

*Bartolotta's Fireworks,* 200 Wis. 2d at 297. "Striking while the iron was hot" is, in short, what Roehl Transport argues that Liberty Mutual failed to do in the present case.

¶ 110. Had the court of appeals reached the conclusion that no claim for the tort of bad faith could be asserted, it would not have gone on to determine whether the facts were sufficient to support the allegation of bad faith.[40] The bad faith claim was thrown out not because the settlement was within policy limits but because the facts before the court were insufficient to support an allegation of bad faith conduct.

¶ 111. We read *Bartolotta's Fireworks* to support Roehl Transport's claim. The court of appeals in *Bartolotta's Fireworks* faced a claim of bad faith for a settlement that was within policy limits but also exposed the insured to financial risk on its "self insurance." The court of appeals treated the allegations of the bad faith

---

[40] In *Anderson*, the court relied on exactly this reasoning in its analysis of *Drake v. Milwaukee Mutual Insurance Co.,* 70 Wis. 2d 977, 236 N.W.2d 204 (1975):

> Had the court reached the conclusion that, under no set of pleadings, a claim for what it called a tortious breach of contract could be asserted against an insurer, it would not have proceeded to determine whether the facts were sufficient to state that cause of action, but it did just that. The claim of tortious breach of contract was thrown out, not because such a claim could not be asserted under Wisconsin law against an insurer, but because the facts pleaded were insufficient.

*Anderson,* 85 Wis. 2d at 685.

In other words, a court that considers whether the facts alleged are sufficient to support the stated cause of action implicitly acknowledges that the cause of action is potentially viable.

claim in *Bartolotta's Fireworks* as it would have treated a settlement in excess of policy limits.

¶ 112. We apply the same rationale in the present case as the court of appeals utilized in *Bartolotta's Fireworks*. When a conflict exists between the interests of an insurance company and the interests of an insured, and the insurance company has control over the claim, the insurance company has a duty to act in good faith to protect the interests of the insured. When an insurance company breaches that duty, a cause of action for bad faith is cognizable in Wisconsin.

¶ 113. Our study of the development of the doctrine of bad faith in insurance claims in Wisconsin case law demonstrates that the tort of bad faith has been developing in Wisconsin case law and that Roehl Transport's bad faith claim is supported by the doctrine developed in our previous decisions.

### D

¶ 114. Each party cites cases from other jurisdictions to support its position. Only a few state courts have addressed the issue the instant case presents. The cases from other jurisdictions are not in agreement about recognizing a bad faith claim in situations comparable to the instant case. Cases in several jurisdictions appear to recognize a bad faith claim when the insured's deductible, which is less than the policy limits, may be at risk.[41] Other cases appear to conclude that

---

[41] *See, e.g., Commerce & Indus. Ins. Co. v. N. Shore Towers Mgmt. Inc.,* 162 Misc. 2d 778, 781 (N.Y. City Civ. Ct. 1994) ("[T]here is also compelling authority that a bad faith claim may be raised as to an insurer's settlement within policy limits which causes the insured to become liable for a deductible."); *Guaran-*

when a liability policy contains a deductible clause along with a clause granting an insurance company an unfettered right to settle, the insured has bargained

*tee Ins. Co. v. City of Long Beach,* 106 A.D.2d 428, 428–29 (N.Y. App. Div. 1984) (setting forth bad faith standard for claim against insurance company settling within limits and forcing insured to pay deductible), *overruled on other grounds by Pavia v. State Farm Mut. Auto. Ins. Co.,* 626 N.E.2d 24 (N.Y. 1993) (bad faith standard in *Long Beach* case too demanding for policyholder); *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.,* 966 S.W.2d 559, 562 (Tex. Ct. App. 1998) (insurance company owes insured a duty to handle claims against it in such a way as to minimize" the insured's liability and damages in its finances); *Orion Ins. Co. v. Gen. Elec. Co.,* 493 N.Y.S.2d 397, 455 (N.Y. Sup. Ct. 1985), *aff'd by U.S. Aviation Underwriters, Inc. v. Gen. Elec. Co.,* 509 N.Y.S.2d 778 (N.Y. App. Div. 1986) (court tacitly recognized validity of an insured's cause of action for bad faith notwithstanding the absence of liability in excess of limits).

Ashley, *supra* note 13, § 4:22 at 4–78 to 4–79, comments on the *Orion* case as follows:

Later courts have incorrectly read *Orion* as rejecting the notion that an insurer may incur liability for bad faith based on the insurer's decision to accept a settlement offer within the policy limits. This confusion probably stems from the Orion court's invocation of New York's narrow definition of bad faith. The possibility of unfair settlements of meritless cases under high-deductible policies certainly seems to implicate the cause of action for bad faith and raises the issue how one might address the problem in the majority of American jurisdictions . . . .

. . . .

The New York court correctly perceived that the facts at least raised an issue as to [the insurance company's] bad faith . . . . "[T]he inquiry must be akin to that undertaken in a case where an insurer is sued for a bad-faith refusal to settle."

*See also* Jon Epstein, *Liability of Insurer to Insured for Settling Third-Party Claim Within Policy Limits Resulting in Detriment to Insured,* 18 A.L.R. 5th 474, § 8[a] (1994) (collecting cases).

away any rights to protest how the insurance company disposes of the insured's deductible.[42]

¶ 115. After examining the Wisconsin case law and the cases from other jurisdictions, we conclude that the Wisconsin case law has never declared that the three previously recognized situations giving rise to bad faith claims are the only bad faith claims cognizable in Wisconsin. We further conclude that Roehl Transport, which has a policy with a deductible, has stated a cognizable bad faith claim against its insurance company, Liberty Mutual, when the company exercised control over the settlement of a third-party claim against Roehl Transport and the verdict in the underlying liability case imposed personal liability on Roehl Transport but was within the policy limits.

¶ 116. We now determine whether the jury's verdict in favor of Roehl Transport's bad faith claim was supported by credible evidence.

### III

¶ 117. Liberty Mutual asserts that there is no credible evidence for a finding of bad faith. Liberty Mutual argues (A) that the jury instruction required the jury to find "dishonesty and deceit" to conclude that Liberty Mutual had acted in bad faith and that no credible evidence supported the jury's finding of bad

---

[42] Liberty Mutual cites *American Protection Insurance Co. v. Airborne, Inc.,* 476 F. Supp. 2d 985, 995 (N.D. Ill. 2007) (court rejected bad faith claim, noting that "[w]hile [the insured] certainly risked significant personal liability in this case because of the large deductible, that risk was exactly what it had contracted for."). *See also* Epstein, *supra* note 41, § 8[b] (collecting cases).

faith when evaluated against this "dishonesty or deceit" standard; and (B) that neither the injured victim, Arthur Groth, nor the President of Roehl Transport, Everett Roehl, the persons who had authority to settle Groth's claim, testified at trial, and that without such testimony Roehl Transport could not prove that the Groth claim could have been settled.

¶ 118. A jury verdict "will not be upset if there is any credible evidence to support it. The evidence will be viewed in the light most favorable to the verdict."[43] Assessment of the credibility of the witnesses and the weight afforded their testimony is left to the jury; when more than one reasonable inference may be drawn from the evidence, reviewing courts accept the inferences that the jury has drawn.[44] It is this court's task to look for credible evidence to sustain the jury's verdict, not to

[43] *Johnson v. Am. Family Mut. Ins. Co.,* 93 Wis. 2d 633, 644, 287 N.W.2d 729 (1980). *See also Helmbrecht v. St. Paul Ins. Co.,* 122 Wis. 2d 94, 109, 362 N.W.2d 118 (1985).

Wisconsin Stat. § 805.14(1) provides:

**Test of sufficiency of evidence.** No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party.

[44] *Millonig v. Bakken,* 112 Wis. 2d 445, 451, 334 N.W.2d 80, 83 (1983) ("Even if the evidence adduced is undisputed, if that evidence permits different or conflicting inferences, a verdict should not be directed; and upon review after verdict, a court is obliged to accept the one adopted by the jury. Thus, it is only in the most unusual case that a jury's verdict will be upset" (internal citations omitted).).

search the record for evidence that might have supported a result contrary to the jury's verdict.[45]

¶ 119. We address each of Liberty Mutual's two arguments challenging the jury verdict and conclude that sufficient credible evidence was presented at trial to support the jury's finding of bad faith.

## A

¶ 120. Liberty Mutual does not challenge the jury instructions on bad faith as erroneous and does not contest the adequacy of the verdict form.[46] Rather, Liberty Mutual interprets the jury instructions as requiring the jury to find that Liberty Mutual made a dishonest decision. Liberty Mutual then argues that no credible evidence was presented that it engaged in dishonest or deceitful conduct.

¶ 121. "A circuit court has wide discretion as to the instructions and special verdicts given to a jury, provided that they adequately cover the law applicable to the facts."[47] Crafting the content of a special verdict and instruction falls within the discretion of the circuit court, and the exercise of discretion will not be dis-

---

[45] *Fehring v. Republic Ins. Co.,* 118 Wis. 2d 299, 305–306, 347 N.W.2d 595 (1984), *overruled on other grounds by DeChant v. Monarch Life Ins. Co.,* 200 Wis. 2d 559, 576, 547 N.W.2d 592 (1996).

[46] The circuit court modified pattern instruction Wis JI— Civil 2760, "Bad Faith by Insurance Company (Excess Verdict Case)," to remove references to a judgment above policy limits and to focus the bad faith inquiry on Liberty Mutual's "failure to settle" the Groths' claim.

[47] *Vogel v. Grant-Lafayette Elec. Co-op.,* 201 Wis. 2d 416, 422, 548 N.W.2d 829 (1996).

turbed on review if all material issues of fact are covered by appropriate questions and the form correctly and adequately covers the law that applies to the case.[48]

¶ 122. In protesting the sufficiency of the evidence, Liberty Mutual focuses narrowly on a single sentence in the lengthy jury instructions on bad faith: "The term 'bad faith' carries with it the suggestion of dishonest or deceitful conduct." Liberty Mutual reads too much into this phrase. The instructions, which adapted Wis JI—Civil 2760, are in keeping with the case law.[49] Liberty Mutual does not argue otherwise or attack the instruction viewed as a whole.

¶ 123. Viewing the jury instruction as a whole, we conclude that the jury was properly instructed. The somewhat lengthy jury instruction included language taken from the pattern instruction and from prior

---

[48] *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 22, ¶ 12, 308 Wis. 2d 103, 115, 746 N.W.2d 762.

[49] Our cases have defined bad faith by reference to "deceit; duplicity; insincerity." *Anderson,* 85 Wis. 2d at 691. The cases characterize bad faith as "a species of fraud." *Nichols v. U.S. Fid. & Guar. Co.*, 37 Wis. 2d 238, 243, 155 N.W.2d 104 (1967). We have said that "the knowing failure to exercise an honest and informed judgment constitutes the tort of bad faith," *Anderson*, 85 Wis. 2d at 692, and that "[t]he insurance company, . . . to be liable, need not be found to have committed fraud or to have acted dishonestly . . . ." *Alt,* 71 Wis. 2d at 354. A jury may properly conclude that an insurance company's "massive failure" to carry out its identified duties constitutes a " 'suggestion of dishonesty' or 'a species of fraud,' within the meaning of 'bad faith.' " *Baker v. N.W. Nat'l Cas. Co. (Baker II)*, 26 Wis. 2d 306, 315, 132 N.W.2d 493 (1965).

cases. The jury was instructed that bad faith carries with it a suggestion of dishonesty.[50]

¶ 124. The jury was also instructed that " '[B]ad faith' is a term of broad application, and it is sometimes difficult to exactly define within the framework of every case"; that the jury must "consider whether the company, in failing to perform the duties it owed to Roehl Transport[,] demonstrated a significant disregard of Roehl Transport's rights and economic interests"; that the company's "decision not to settle should be an honest one, taking into consideration both the interests of the company and the interests of the insured;" that the company's "[negligence] alone is not enough to show the company acted in bad faith"; that the jury is to "consider the totality of the insurance company's decisions in the handling of the injured party's claim to determine whether those decisions were intellectually honest and reasonable"; that if the jurors determine that the company's decisions "were not honest and reasonable decisions, then the company may be said to have acted in bad faith"; and that if the jurors "conclude that important facts were recklessly ignored and disregarded during Liberty Mutual's adjustment of the claim, then the company may be said to have acted in bad faith."

¶ 125. We conclude that the jury verdict was entered in response to proper jury instructions. We do not accept Liberty Mutual's conclusion that the instructions required a specific finding of deceit or dishonesty.

¶ 126. The trial on the issue of bad faith lasted eight days. The jury was instructed that Roehl Trans-

---

[50] *See Baker II,* 26 Wis. 2d at 316 ("[T]he insurer was amply protected by the instructions that bad faith 'carries with it a suggestion of dishonesty' and is 'a species of fraud.' ").

port bore the burden of showing bad faith to a reasonable certainty by clear, satisfactory, and convincing evidence.

¶ 127. We need not review every detail of the extensive record. We need state only that a review of the record shows that a jury could conclude from the evidence that Liberty Mutual's decisions demonstrated a significant disregard of Roehl Transport's rights and economic interests and were not honest. The evidence showed that Liberty Mutual employed claims personnel on the Groth claim who had little training or experience with trucking claims; that there was high turnover in staffing the Groth claim; that Liberty Mutual failed to adequately supervise the staff's handling of the claim; that the investigation of the accident and Groth's injuries and medical condition was inadequate; that the insurance company mishandled the independent medical examination so that the extent of injury and disability liability attributed to Roehl Transport was exaggerated; that Liberty Mutual made no attempt to settle Groth's claims when it had the opportunity to do so; and that Liberty Mutual failed to retain experts, including an accident reconstructionist, who could have provided evidence limiting Roehl Transport's liability to Groth.

¶ 128. From this evidence, the jury could reasonably conclude that Liberty Mutual exhibited a significant disregard of Roehl Transport's interests with the consequence that important actions to protect Roehl Transport's interests were not taken, and that the decisions made in handling the Groth claim were not honest. Credible evidence exists to support the jury verdict.

¶ 129. While Liberty Mutual points to evidence that contradicts the jury's finding, the jury was free to rely on the evidence it found most credible.

B

¶ 130. Liberty Mutual also argues that neither Arthur Groth, the injured victim, nor Everett Roehl, the president of Roehl Transport, the only persons who had authority to settle Groth's claim, testified at trial, and that without the testimony of these persons Roehl Transport could not prove that the Groth claim "could have settled" for $100,000.

¶ 131. Liberty Mutual argues that no settlement could be reached unless these two persons agreed to it and that although Roehl Transport argued that the case should have settled for $100,000 in February 2001, it provided no evidence that Arthur Groth would have accepted that sum.

¶ 132. One of Roehl Transport's expert witnesses, Thomas Thibodeau, an attorney with over forty years' experience in trucking accident and insurance matters, testified that based on his experience and his review of the Groth case, the estimated settlement value of the case was "certainly under" $100,000, that Liberty Mutual should have been willing to pay $100,000 to settle the claim before the personal injury lawsuit was initiated, and that Liberty Mutual "disregarded Roehl's interest" in failing to get the case resolved for $100,000.

¶ 133. Roehl Transport's other expert witness, Donald Downey, was an experienced claims manager in the trucking industry. Mr. Downey testified that the nature of Liberty Mutual's request for medical records from Groth's attorney was "quite burdensome" and "off-putting" and that it was "shooting yourself in the

foot" for an insurance company to refuse to review medical information before the plaintiff finished treating for his injuries, as Liberty Mutual had done here. Mr. Downey opined that Liberty Mutual did not make reasonable efforts to obtain medical information from Groth, at least in part because Liberty Mutual's staff was inexperienced.

¶ 134. In Mr. Downey's opinion, Liberty Mutual could have settled the claim for $100,000, and the company should have attempted a settlement in that amount. Mr. Downey opined that it was "pretty clear" that Liberty Mutual's errors and omissions had caused damage to Roehl Transport and further that Liberty Mutual had demonstrated a significant disregard for Roehl's interests.

¶ 135. Ardell Skow, Arthur Groth's attorney in the personal injury suit against Roehl Transport, refused to comment on the specifics of his analysis of Mr. Groth's claim because of the attorney-client privilege. Nevertheless, he responded to a hypothetical with facts similar to Groth's claim. Relying on his experience, he opined that a reasonable settlement value for the hypothetical claim would be $103,000 to $133,000.

¶ 136. Liberty Mutual's own adjuster, Nicole Bartunek, testified that a claim like Groth's settles 99 percent of the time for under $100,000.

¶ 137. Liberty Mutual argues that absent testimony from the two parties authorized to settle the Groth claim—Arthur Groth and Everett Roehl—the jury could not reasonably conclude that the Groth claim could have been settled, and therefore that the evidence cannot support the verdict.

¶ 138. Although Groth's and Roehl's testimony may have been relevant, Roehl Transport was not required to seek their testimony, and their testimony

was not necessary in order for a jury to find that Liberty Mutual acted in bad faith and damaged Roehl Transport. Sufficient credible evidence was presented from which the jury could conclude that Liberty Mutual committed bad faith in failing to settle the Groth claim for a value within Roehl Transport's $500,000 deductible.

¶ 139. Although Liberty Mutual points to evidence that might undermine or contradict the jury's finding, the jury was entitled to rely on the evidence it found most credible and persuasive. The circuit court properly denied Liberty Mutual's motion challenging the jury's verdict.

IV

¶ 140. We next examine Liberty Mutual's argument that judicial public policy considerations bar Roehl Transport's bad faith claim based on expert testimony regarding what the underlying Groth claim "could have settled for." Liberty Mutual raised this issue on motion for summary judgment in the circuit court. The circuit court denied the motion. Liberty Mutual raises this issue in this court. Application of judicial public policy considerations is a question of law for this court to decide independently, benefiting from the analysis of the circuit court.[51]

¶ 141. Liberty Mutual argues that judicial public policy considerations preclude liability in the present case even if the court decides that the jury verdict was

---

[51] *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 541, 247 N.W.2d 132 (1976).

not flawed. The court has applied judicial public policy considerations in tort cases based on negligence to bar liability, recognizing that "cases in which a causally negligent tortfeasor is relieved of liability [on judicial public policy grounds] are infrequent and present unusual and extreme considerations."[52]

¶ 142. The court has denied recovery in negligence cases based on the following judicial public policy considerations:

1. The injury is too remote from the negligence;

2. The injury is too wholly out of proportion to the culpability of the negligent tortfeasor;

3. In retrospect it appears too highly extraordinary that the negligence should have brought about the harm;

4. Allowance of recovery would place too unreasonable a burden on the negligent tortfeasor;

5. Allowance of recovery would be too likely to open the way for fraudulent claims; or

6. Allowance of recovery would enter a field that has no sensible or just stopping point.[53]

¶ 143. In support of its argument that we should apply judicial public policy to relieve it of liability for bad faith, Liberty Mutual relies principally on *Schlomer*

---

[52] *Schlomer by Bye v. Perina,* 169 Wis. 2d 247, 253, 485 N.W.2d 399 (1992) (citing *Steward v. Wulf,* 85 Wis. 2d 461, 271 N.W.2d 79, 88 (1978)). *See also Bowen v. Lumbermens Mut. Cas. Co.,* 183 Wis. 2d 627, 644 n.12, 517 N.W.2d 432 (1994) (courts bar liability on public policy grounds "in cases so extreme that it would shock the conscience of society to impose liability").

[53] *See Coffey,* 74 Wis. 2d at 541 (quoting *Hass v. Chicago & N.W. Ry. Co.,* 48 Wis. 2d 321, 179 N.W.2d 885 (1970)).

by *Bye v. Perina,* 169 Wis. 2d 247, 485 N.W.2d 399 (1992), a legal malpractice case in which this court foreclosed the attorney's liability on judicial public policy grounds.

¶ 144. In *Schlomer,* an injured child was represented for approximately three years by an attorney who did not settle the claim or file a lawsuit. *Schlomer,* 169 Wis. 2d at 250. A second attorney took over the case, filed suit in federal court and negotiated a structured settlement with an estimated value of more than $1 million. The child then brought a malpractice action against the first attorney for failing to conclude the case.

¶ 145. The jury found that the first attorney had been negligent in neglecting the claim, that the claim diminished in value during the period of neglect, and that the attorney's neglect denied the child the ability to invest funds from his settlement. *Schlomer,* 169 Wis. 2d at 249. The circuit court awarded damages representing the difference between the amount the client "would have recovered" if not for the lawyer's negligent actions and the settlement entered, plus an amount for the lost use of funds in the intervening period. *Schlomer,* 169 Wis. 2d at 251.

¶ 146. The court of appeals reversed the judgment, concluding that judicial public policy considerations preclude an award for the loss of a larger settlement. There is "no just or sensible stopping point" as to each of the three elements of the child's cause of action: negligence, causation, and damages. *Schlomer,* 169 Wis. 2d at 249, 252.

¶ 147. The Wisconsin Supreme Court affirmed the decision of the court of appeals but rested its decision on different judicial public policy considerations. The supreme court reasoned that recovery must

111

be denied on judicial public policy grounds because the injury is "too remote from the negligence" and "too out of proportion to the culpability of the negligent" lawyer. *Schlomer,* 169 Wis. 2d at 249, 254.

¶ 148. The supreme court stated that "[d]elay by an attorney alone cannot cause damages unless it is probable that it caused the loss of a witness, passing of a statute of limitations or similar results." *Schlomer,* 169 Wis. 2d at 253. The court concluded there was no proof that the insurance carrier would have settled the case earlier than it did. Without evidence about "what the parties would have settled for," the supreme court declared that the jury verdict had been based entirely on speculation.

¶ 149. *Schlomer* is distinguishable from the instant case. *Schlomer* is a negligence case, as are the other cases Liberty Mutual cites to support its judicial public policy argument.[54]

¶ 150. Liberty Mutual suggests that the same judicial public policy analysis applies to any "action sounding in tort."[55] The cases cited do not espouse or support such a general rule. Wisconsin courts have generally applied the six well-established judicial public policy factors to delineate liability in negligence cases.[56]

---

[54] *See* Brief of Defendant-Cross Appellant at 32–35 (citing *Schlomer by Bye v. Perina,* 169 Wis. 2d 247, 485 N.W.2d 399 (1992); *Morgan v. Penn. Gen. Ins. Co.,* 87 Wis. 2d 723, 735, 275 N.W.2d 660 (1979); *Coffey,* 74 Wis. 2d at 541).

[55] Brief of Defendant-Cross Appellant at 32.

[56] *See, e.g., Behrendt v. Gulf Underwriters Ins. Co.,* 2009 WI 71, ¶ 28, 318 Wis. 2d 622, 768 N.W.2d 568; *Stephenson Universal Metrics,* 2002 WI 30, ¶ 43, 251 Wis. 2d 171, 641 N.W.2d 158 (both citing *Colla v. Mandella,* 1 Wis. 2d 594, 598–99, 85 N.W.2d 345 (1957)).

Indeed, five of the six public policy considerations are stated in reference to a *negligent* tortfeasor.

¶ 151. The tort of bad faith in the present case rests on a breach of good faith, not on negligence.[57] Liberty Mutual cites no bad faith case in which the court has applied these judicial public policy factors. We have not found any.

¶ 152. We need not determine in the present case whether some or all of the traditional judicial public policy considerations might ever be applied to preclude recovery in a bad faith action. Even if we were to apply judicial public policy considerations to a bad faith claim, the facts in the present case would not preclude recovery on that basis.

¶ 153. Furthermore, the instant case is distinguishable from *Schlomer* on its facts. The Wisconsin Supreme Court's determination in *Schlomer* rested on a fact-specific evaluation that there had been "no proof" demonstrating the claim would have settled earlier.[58] The court noted that the first attorney had been seriously ill and hospitalized for extended periods during his representation and that he had kept abreast of legal developments, which meant the child's claim was not barred by the passage of time. The child was also free to retain another lawyer to pursue his claim and eventually did so.

¶ 154. In contrast, Liberty Mutual retained control over handling the Groth claim and was in the best position to evaluate the risks. Roehl Transport presented ample evidence from which the jury could conclude that the claim would have settled earlier for a

[57] *Johnson v. Am. Family Mut. Ins. Co.,* 93 Wis. 2d 633, 646, 287 N.W.2d 729 (1980).

[58] *Schlomer,* 169 Wis. 2d at 253.

113

lesser amount. Roehl Transport's witnesses testified that the case should have been settled in the range of $100,000 if not for Liberty Mutual's bad faith conduct. The jury had credible evidence to conclude that Liberty Mutual's bad faith increased Roehl Transport's liability. Thus, there is no basis for the court to conclude in the instant case as a matter of law that the damages were "too remote" from the bad faith and "too out of proportion to the culpability," as the court determined in *Schlomer*. The consequences suffered—greater liability to a tort victim—were exactly what would be expected from an insurance company's bad faith handling of a liability claim.

¶ 155. To the extent that Liberty Mutual argues that the hypothetical value for which a claim "could have settled" should never be a permitted basis for recovery, this court's decision in *Schlomer* undermines their argument. There, the supreme court held that delay by an attorney standing alone could not justify recovering damages but allowed that "loss of a witness . . . or similar results" might warrant recovery. *Schlomer*, 169 Wis. 2d at 253.

¶ 156. In the instant case, Roehl Transport adduced evidence from which the jury could conclude that Liberty Mutual acted in bad faith by failing to retain an accident reconstructionist and failing to secure evidence to reduce Roehl Transport's liability. The consequences of these actions are "similar to" the loss of a witness, which *Schlomer* suggests can permit recovery of damages.[59]

---

[59] In *Schlomer*, the court of appeals relied on a broad policy rationale, namely that allowing recovery would "open[] the door to malpractice claims . . . resting largely on evidence of an abstract and hypothetical nature," and permit recovery in an

114

¶ 157. Liberty Mutual's argument to preclude liability does not ultimately rest on judicial public policy considerations. In arguing this issues, Liberty Mutual is in essence restating their protest that only speculative or opinion evidence of the possible settlement value of Groth's claim was presented. Liberty Mutual's judicial public policy argument amounts to reiterating the company's attack on the sufficiency of the evidence supporting the jury's verdict and award of damages. We have already reviewed the evidence and have rejected Liberty Mutual's attack on its sufficiency.

¶ 158. The award of damages in the present case is not barred by judicial public policy considerations.

## V

██ ██

¶ 159. Next we consider the issue of attorney fees. In its complaint, Roehl Transport sought recovery of its attorney fees and costs in bringing this bad faith action. Both parties agree, as do we, that attorney fees are recoverable as compensatory damage in a bad faith action.[60] Liberty Mutual argues, however, that it has a constitutional right to a jury to determine attorney fees and that Roehl Transport was required to submit proof of the amount of its attorney fees to the jury. Whether attorney fees may be awarded as damages in a bad faith

area with no "sensible or just stopping point." *See Schlomer,* 169 Wis. 2d at 251–52. The supreme court explicitly rejected this broader reasoning, resting the high court's decision to deny recovery on a narrower and more fact-specific evaluation. *Id.* at 254.

[60] "[A]s damages resulting from the tort of bad faith, attorney fees do not remain attorney fees, but instead are transformed into damages." *Stewart v. Farmers Ins. Group,* 2009 WI App 130, ¶ 14, 321 Wis. 2d 391, 773 N.W.2d 513.

claim is a question of law that this court determines independently, benefiting from the analysis of the circuit court.[61]

¶ 160. The jury was not asked in the present case to decide whether Roehl Transport should be awarded attorney fees or in what amount. Rather, Roehl Transport filed a post-trial motion with the circuit court seeking an award of its attorney fees. The circuit court denied Roehl Transport's motion because "Roehl Transport decided not to bring evidence of attorney's fees at trial" and "compensatory damages must be awarded by the trier of fact based on the evidence brought at trial . . . ."

¶ 161. We conclude that Roehl Transport was entitled to attorney fees as a matter of law as a result of the jury's finding of bad faith and that the determination of the amount of attorney fees as compensatory damages is a matter of law for the circuit court to determine. Accordingly, the circuit court erred in denying Roehl Transport's request for attorney fees and in failing to determine the amount of fees to be awarded to Roehl Transport. We therefore reverse the circuit court's denial of Roehl Transport's motion requesting attorney fees and remand the matter to the circuit court to determine the attorney fees to be awarded to Roehl Transport as compensatory damages.

¶ 162. The critical case on which both parties rely in discussing attorney fees is *DeChant v. Monarch Life Ins. Co.,* 200 Wis. 2d 559, 547 N.W.2d 592 (1996). In *DeChant,* a first-party bad faith case, the insured sued

---

[61] *DeChant,* 200 Wis. 2d at 568 (citing *Newhouse by Skow v. Citizens Sec. Mut. Ins.,* 176 Wis. 2d 824, 837, 501 N.W.2d 1 (1933)).

his insurance company for breach of contract and for bad faith for the insurance company's discontinuation of his disability benefits.[62] In special interrogatories, the jury found, inter alia, that the insurance company had breached the policy and that it had acted in bad faith. It awarded "100 percent" of the insured's attorney fees incurred in prosecuting the lawsuit, in addition to other damages.[63] The jury did not, however, enter findings about attorney fees or award the dollar amount of the fees. The circuit court then inserted a dollar amount into the verdict form for attorney fees.[64]

¶ 163. The Wisconsin Supreme Court granted review to decide whether attorney fees incurred by an insured in prosecuting an insurance bad faith action constitute compensable damages for bad faith. The court determined that the insured's attorney fees were to be awarded as damages, reasoning that "when an insurer acts in bad faith by denying benefits, it is liable to the insured in tort for any damages which are the proximate result of that conduct" and that attorney fees should be included in compensatory damages when "bad faith caused [the insured] to incur legal expenses" because he "was forced to retain an attorney to obtain the benefits" of his insurance policy. *DeChant,* 200 Wis. 2d at 571.[65]

---

[62] *DeChant,* 200 Wis. 2d at 565.

[63] *Id.* at 566.

[64] *Id.* at 566–67.

[65] The *DeChant* court "recognized the subtle but significant difference between attorney's fees attributable to bringing a lawsuit and those recoverable as damages resulting from a tort. The former is intended to compensate the attorneys, whereas the latter is intended to compensate the victims." *Reusch v. Roob,* 2000 WI App 76, ¶ 35, 234 Wis. 2d 270, 610 N.W.2d 168.

¶ 164. *DeChant* was extended to third party bad faith claims in *Majorowicz v. Allied Mutual Insurance Co.,* 212 Wis. 2d 513, 569 N.W.2d 472 (Ct. App. 1997). In *Majorowicz,* as in the present case, an insured sued the insurance company for bad faith in handling a third-party personal injury claim. *Majorowicz,* 212 Wis. 2d at 521.

¶ 165. On a motion for relief from judgment pursuant to Wis. Stat. § 806.07, Majorowicz moved for an award of attorney fees, urging the circuit court to award attorney fees as allowed in the *DeChant* case, which had just been decided. The circuit court granted the motion and awarded actual attorney fees. The circuit court did not require a jury determination of attorney fees.

¶ 166. In *Majorowicz,* the court of appeals concluded that *DeChant* required "recovery of attorney fees as actual damages" in a third-party bad faith claim. In order to avoid "uncompensable harms," the court of appeals held that legal expenses resulting from the insurance company's bad faith should be affirmed as a proper award of damages. The court of appeals reasoned that:

> Allied's bad faith conduct exposed Majorowicz to an additional set of harms not covered by her policy. Unless Majorowicz is able to obtain relief in the form of attorney fees and other damages, the bad faith denial in not properly investigating, evaluating and properly communicating with her exposes her to numerous uncompensable harms. Allied's bad faith caused Majorowicz to incur legal expenses. If Allied had properly investigated, evaluated, and settled the claims, Majorowicz would not have had to seek the assistance of an attorney to represent her in the bad faith claim.

*Majorowicz,* 212 Wis. 2d at 536.

¶ 167. The instant case is analogous to *Majorowicz*. Had Liberty Mutual properly fulfilled its responsibilities in handling the Groth claim, Roehl Transport would not have had to hire an attorney to recover its losses in this bad faith claim. *Majorowicz* teaches that when a jury finds bad faith in a third-party bad faith claim, the insured is entitled to recovery of attorney fees as a matter of law, a jury determination of the amount of the attorney fees is not required, and the circuit court may determine the amount of attorney fees.

¶ 168. Subsequent bad faith cases have recognized that the circuit court can determine the attorney fees to be awarded as damages in bad faith tort cases. For example, in *Allied Processors, Inc. v. Western National Mutual Insurance Co.*, 2001 WI App 129, ¶ 39, 246 Wis. 2d 579, 629 N.W.2d 329, in a post-verdict motion, the insured in a third-party bad faith claim sought an award of attorney fees as compensatory damages based on the jury's finding of bad faith. The circuit court then entered judgment for the amount of attorney fees sought, namely one-third of the amount of the jury's compensatory damages award under a contingency fee arrangement.

¶ 169. The court of appeals affirmed both the insured's right to recover attorney fees and the circuit court's determination of the amount.[66] Assuming without deciding that the insured must establish that the fees actually incurred were reasonable,[67] the court of

[66] *Allied Processors, Inc. v. W. Nat'l Mut. Ins. Co.*, 2001 WI App 129, ¶¶ 45, 47, 246 Wis. 2d 579, 629 N.W.2d 329.

[67] The parties disputed who had the burden of proof. The insured argued that when attorney fees are a component of compensatory damages, the rule should be that the insured may recover the actual fees unless the insurance company shows that the fees are unreasonable. The insurance company appar-

appeals affirmed the amount of fees entered as a proper exercise of the circuit court's discretion.

¶ 170. These cases thus teach that the successful complainant in a bad faith action is entitled to an award of attorney fees as compensatory damages, and that the circuit court is in a position to determine the amount of the award.

¶ 171. *DeChant* also teaches, however, that there may be cases in which a question about the award of jury fees as compensatory damages for bad faith is best submitted to the jury. In *DeChant,* the plaintiff was seeking damages for both breach of contract and bad faith. The two actions were tried together. The jury was asked, "[W]hat amount of money would fairly compensate Plaintiff for damages caused by Defendant's bad faith conduct?" The jury answered as follows:

a) for attorney's fees: 100%

b) for bond premiums: 100%

c) for all other: $300,000

¶ 172. The apportionment of attorney fees between the two different causes of action may have made a jury determination necessary in *DeChant.* In the instant case, only the bad faith claim was submitted to the jury. Roehl Transport was entitled to an award of attorney fees as a matter of law and no apportionment of attorney fees was required. The circuit court therefore erred in the present case in denying an award for attorney fees that Roehl Transport claimed in its complaint and thereafter.

ently argued that the insured must establish that the actual fees were reasonable attorney fees. *Allied Processors,* 246 Wis. 2d 579, ¶ 45.

¶ 173. Liberty Mutual's arguments that a jury determination of attorney fees is required in the instant case are not persuasive. Attorney fees are awarded as a matter of law to a successful claimant in a bad faith action. Practical trial court processes and the unique nature of a circuit court's expertise in determining attorney fees make the award of attorney fees different from other compensatory damages to be determined by the jury.

¶ 174. Liberty Mutual argues that *Brandt v. Superior Court of San Diego County,* 693 P.2d 796 (Cal. 1985), a case explained and followed in *DeChant,* teaches that the award of attorney fees must be made by the jury. *Brandt* was a first-party bad faith case in which the insured brought a bad faith claim together with a breach of contract claim. *Brandt* stated that since the attorney fees were recoverable as damages in a bad faith claim, the determination of the recoverable fees must be made by the trier of fact unless the parties stipulate otherwise.[68] Liberty Mutual argues that adhering to *Brandt,* it was entitled to have the jury decide the issue of attorney fees.

¶ 175. We are not persuaded that *DeChant*'s reliance on *Brandt* requires that the award of attorneys fees be made by the jury.

¶ 176. *DeChant* adopted the substantive law stated in *Brandt* that attorney fees were recoverable as damages in a bad faith claim, but *DeChant* did not adopt *Brandt*'s discussion of a jury trial.

¶ 177. Furthermore, the *Brandt* court itself recognized that an award of attorney fees made by the trial court after trial "would normally be preferable since the

---

[68] *Brandt v. Sup. Ct. of San Diego County,* 693 P.2d 796, 819 (Cal. 1985).

determination then would be made after completion of legal services, and proof that otherwise would have been presented to the jury could be simplified because of the court's expertise in evaluating legal services."[69] *Brandt* thus recognized that the position Liberty Mutual argues would make it impossible for the jury to address the full value of damages. Attorney fees continue to be incurred in the final stages of trial, in closing arguments, and in post-trial proceedings, all of which cannot be determined by the jury.[70]

¶ 178. Furthermore, if we accepted Liberty Mutual's position, documentation of the attorneys' actions and testimony by the attorneys would need to be presented to the jury, shifting the focus of the trial away from the central issues and creating the unavoidable risk of prejudice. Inadmissible evidence produced in discovery for which attorney fees were incurred might have to be produced, and issues that were dismissed before trial but for which the claimant nevertheless incurred attorney fees would have to be raised at trial. The same attorneys litigating the case would be called upon to testify about the nature of their trial preparations and the value of their services. Trying the amount of attorney fees to a jury in the same trial in which the bad faith claim is being decided presents unworkable challenges to the orderly conduct of the trial process.

¶ 179. A trial court's expertise and preferential position in evaluating legal services, as recognized in

---

[69] *Brandt,* 693 P.2d at 800.

[70] Even the *Brandt* case, which explicitly recognized the right to a determination by the trier of fact on proper allocation of attorneys' fees, noted that "[a] stipulation for a postjudgment allocation and award by the trial court would normally be preferable since the determination then would be made after completion of the legal services." *Brandt,* 693 P.2d at 819.

*Brandt,* is also a well-accepted concept in Wisconsin law: The circuit court "is in an advantageous position to observe the amount and quality of work performed and has the expertise to evaluate the reasonableness of the fees."[71]

¶ 180. Only a separate trial on the issue of attorney fees after all other proceedings on the bad faith claim have concluded would allow all attorney fees to be presented and proved to a jury. The law does not require such an extraordinary procedure, and Liberty Mutual cites no case in which such a procedure has been followed.

¶ 181. For these reasons, *Brandt* does not persuade us to adopt Liberty Mutual's position.

¶ 182. Liberty Mutual also cites a recent decision by the court of appeals, *Stewart v. Farmers Ins. Group,* 2009 WI App 130, 321 Wis. 2d 391, 773 N.W.2d 513, as support for its position. Liberty Mutual argues that just as the award of attorney fees was subsumed in the offer of judgment in *Stewart,* here attorney fees should be considered as included in the jury's award of compensatory damages.

¶ 183. *Stewart* does not support Liberty Mutual. *Stewart* recognizes that attorney fees become recoverable as damages upon a finding of bad faith and that an offer of judgment includes all damages. A litigant cannot accept an offer of judgment as a complete settlement and then seek a further award of attorney fees as damages. In the instant case, no evidence of

---

[71] *Allied Processors,* 246 Wis. 2d 579, ¶ 46. In *Tesch v. Tesch,* 63 Wis. 2d 320, 334–35, 217 N.W.2d 647 (1974), the court observed that familiarity with the case made the trial court better suited than the jury to evaluate and award a claim for attorney fees.

attorney fees was presented to the jury. Roehl Transport did not ask the jury for an award of attorney fees. Under these circumstances, the jury's damage award cannot be considered to have included the attorney fees to which Roehl Transport is legally entitled.

¶ 184. In sum, the cases teach that a postverdict determination of attorney fees by the circuit court has been an acceptable procedure for the award of attorney fees as part of compensatory damages recoverable in a bad faith claim. Here, the jury found that Liberty Mutual acted in bad faith. Roehl Transport is entitled to an award of attorney fees as compensatory damages. The amount of the attorney fees may be determined by the circuit court on a postverdict motion. We therefore reverse the circuit court's denial of Roehl Transport's motion seeking attorney fees and remand the matter to the circuit court to determine the amount of attorney fees Roehl Transport may recover as compensatory damages.[72]

---

[72] Roehl Transport asks this court to enter an order awarding $738,191 in attorney fees and costs. It argues that because Liberty Mutual had no specific objection to any item of Roehl Transport's claimed fees, this court should award the full amount claimed.

We disagree with Roehl Transport. The circuit court's determination of the value of attorney fees will ordinarily be affirmed except for an erroneous exercise of discretion. In the present case, the circuit court has made no determination for us to review. We therefore should remand to allow the circuit court to act.

Another reason for remand is that it is not apparent whether Roehl Transport's submitted claim for attorney fees improperly includes a share of fees attributable to its pursuit of punitive damages in the present case. *See DeChant,* 200 Wis. 2d at 581 (Abrahamson, J., concurring) ("[A]ttorney fees incurred in proving punitive damages cannot be construed as damages resulting

## VI

¶ 185. At last, we turn to the final issue presented: whether the circuit court erred in dismissing Roehl Transport's claim for punitive damages.

¶ 186. In its complaint, Roehl Transport sought punitive damages "in an amount to be determined by the trier of fact." The circuit court ruled that Roehl Transport could not pursue punitive damages, and the issue was not put to the jury. After the verdict was entered, Roehl Transport moved for a second trial only on the issue of punitive damages. The circuit court denied this motion. Roehl Transport raised this issue in this court.

 

¶ 187. "A circuit court submits a question of punitive damages to the jury only after determining, as a matter of law, that there is evidence to support an award of punitive damages."[73] Whether sufficient evidence is presented to submit the question of punitive damages to a jury is a question of law for this court's independent determination, benefiting from the analysis of the circuit court.[74]

---

from tortious bad faith conduct. Instead, they begin as attorney fees and remain attorney fees, never undergoing a transvaluation into damages."); *Majorowicz,* 212 Wis. 2d at 536–37 (declaring that attorney fees incurred in pursuing punitive damages are not available as a component of compensatory damages for a bad faith claim); *Allied Processors,* 246 Wis. 2d 579, ¶ 42 n.11 (same).

[73] *Miller v. Wal-Mart Stores, Inc.,* 219 Wis. 2d 250, 268, 580 N.W.2d 233 (1998).

[74] *Wischer v. Mitsubishi Heavy Indus. Am., Inc.,* 2005 WI 26, ¶ 4, 279 Wis. 2d 4, 694 N.W.2d 320; *Strenke v. Hogner,* 2005 WI 25, ¶ 13, 279 Wis. 2d 52, 694 N.W.2d 296.

¶ 188. The availability of punitive damages is governed by Wis. Stat. § 895.043.[75] A plaintiff "may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." Wis. Stat. § 895.043(3).

¶ 189. Circuit courts are to "serve as gatekeepers before sending a question on punitive damages to the jury" and "should not submit the issue of punitive damages to the jury in the absence of evidence warranting a conclusion to a reasonable certainty that the party against whom punitive damages may be awarded acted with the requisite . . . conduct."[76]

¶ 190. We have interpreted the statutory standard of an "intentional disregard of the rights of the plaintiff" to require "a purpose to disregard the plaintiff's rights" or an awareness that one's actions "are substantially certain to result in the plaintiff's rights being disregarded.[77] In *Strenke v. Hogner,* 2005 WI 25, 279 Wis. 2d 52, 694 N.W.2d 296, we described this "heightened" standard of "purposeful disregard" imposed by Wis. Stat. § 895.043 as follows:

[A] person acts in an intentional disregard of the rights of the plaintiff if the person acts with a purpose to disregard the plaintiff's rights, or is aware that his or her acts are substantially certain to result in the plaintiff's rights being disregarded. This will require

---

[75] Wisconsin Stat. § 895.043 was previously codified as Wis. Stat. § 895.85. The section was renumbered without substantive change by 2005 Wis. Act 155 § 71.

[76] *Strenke,* 279 Wis. 2d 52, ¶ 40 (citing *Bank of Sun Prairie v. Esser,* 155 Wis. 2d 724, 735, 456 N.W.2d 585 (1990)). *See also Wischer,* 279 Wis. 2d at 21.

[77] *Strenke,* 279 Wis. 2d 52, ¶ 38.

126

that an act or course of conduct be deliberate. Additionally, the act or conduct must actually disregard the rights of the plaintiff, whether it be a right to safety, health or life, a property right, or some other right. Finally, the act or conduct must be sufficiently aggravated to warrant punishment by punitive damages.

*Strenke,* 279 Wis. 2d 52, ¶ 38.

¶ 191. In the instant case, the circuit court determined not to submit Roehl Transport's claim for punitive damages to the jury and dismissed the claim, observing that "nothing that I heard even came close" to justifying punitive damages.[78] Postverdict, Roehl Transport moved for a new trial on the issue of punitive damages, and the circuit court denied this motion.

¶ 192. Independently reviewing the evidence, we affirm the circuit court's rulings on punitive damages. The evidence does not show that Liberty Mutual had a "purpose" to disregard Roehl Transport's rights or was aware that their acts were "substantially certain" to result in such disregard. Moreover, the conduct was not

---

[78] At the close of plaintiff's evidence, Judge Lundell ruled from the bench on punitive damages as follows:

I listened to the testimony and the depositions and whatever with an ear toward . . . the operative language for punitive damages. I, honestly, regarding punitive damages, did not hear anything that was so outrageous that that particular aspect of the complaint ought to go on. To me, this is a case where there was an opportunity to settle early on . . . for lots of reasons, none of which rise to the level of punitive conduct, for lots of reasons didn't happen. . . . I'm not sure you need an expert to give an opinion about punitive damages, but there just simply is nothing there. And I listened carefully. I was waiting for it, because I thought that was sort of something the plaintiff was going to be bringing in somewhere along the way, but I didn't hear it. So . . . punitive damages are not going to go forward. That's it.

127

of a type "sufficiently aggravated" to warrant punitive damages. The circuit court properly withheld the issue of punitive damages from the jury.

¶ 193. Roehl Transport argues that the award of punitive damages upheld in the bad faith case of *Majorowicz v. Allied Mutual Ins. Co.*, 212 Wis. 2d 513, 569 N.W.2d 472 (Ct. App. 1997), is applicable here. We disagree with Roehl Transport. *Majorowicz* is readily distinguished.

¶ 194. *Majorowicz* was analyzed under the common-law standard for punitive damages that preceded the enactment of Wis. Stat. § 895.043. *See Majorowicz*, 212 Wis. 2d at 532–33. In enacting Wis. Stat. § 895.043, the legislature intended to make punitive damages less readily available.[79]

¶ 195. Moreover, the facts of *Majorowicz* demonstrate that punitive damages are not warranted in the instant case. There, the insured carried $100,000 in auto liability coverage. After the insurance company refused a settlement offer for the policy limits, total judgment was entered against the insured for $221,213.10. Although the facts presented "a clear liability case," the insurance company, in possession of negative medical reports, had advised the insured that there was little chance of an excess verdict, advised the insured against hiring her own lawyer, and did not inform the insured of a settlement offer. The jury could reasonably conclude that under these circumstances the insurance company's actions demonstrated "inten-

[79] *See Strenke*, 279 Wis. 2d 52, ¶ 34 ("the legislature intended to require an increased level of consciousness and deliberateness at which the defendant must disregard the plaintiff's rights in order to be subject to punitive damages").

tional disregard" of rights. *Majorowicz,* 212 Wis. 2d at 532–33; *see also Strenke,* 279 Wis. 2d at 65–66.

¶ 196. By contrast, the evidence in the present case does not justify punitive damages. Although ample evidence exists to support the jury's finding of bad faith, the record does not show that Liberty Mutual's actions demonstrated "intentional disregard" of Roehl Transport's rights as we have interpreted that standard. The evidence does not demonstrate that Liberty Mutual had "a purpose to disregard the plaintiff's rights" or an awareness that its actions "are substantially certain to result in the plaintiff's rights being disregarded."

¶ 197. The circuit court heard the evidence and concluded that the issue of punitive damages should not be submitted to the jury. We agree with the circuit court. We affirm the circuit court's dismissal of the punitive damages claim and denial of Roehl Transport's motion for a new trial on punitive damages.

\* \* \* \*

¶ 198. In conclusion, we hold as follows:

(1) Roehl Transport, an insured with a deductible for its liability coverage, has a cognizable bad faith claim against its insurance company when the company has control over settlement of a third-party claim and engaged in bad faith conduct toward the insured, even though the judgment does not exceed the policy limits.

(2) Sufficient credible evidence supports the jury's finding of bad faith and the jury's determination of damages in this case.

(3) Judicial public policy does not preclude Roehl Transport's bad faith claim.

(4) Roehl Transport is entitled to attorney fees as a matter of law upon the jury's finding of bad faith. The amount of attorney fees to be awarded is for the circuit court to determine on remand.

(5) The circuit court did not err in denying Roehl Transport's claim for punitive damages.

¶ 199. Accordingly, we affirm the judgment and order of the circuit court awarding Roehl Transport damages on its bad faith claim and denying Roehl Transport's claim for punitive damages. We reverse the circuit court's denial of attorney fees to Roehl Transport and remand to the circuit court the determination of the amount of attorney fees Roehl Transport may recover.

*By the Court.*—The judgment and order of the circuit court are affirmed in part and reversed in part, and the cause is remanded.

